RECEIVED
DEC 1 5 2014
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| PAUL TOCE, M.D. | CIVIL ACTION NO. 6:13CV2440 |
| VERSUS | JUDGE DOHERTY |
| NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY | MAGISTRATE JUDGE HANNA |

## MEMORANDUM RULING

Currently pending before the Court is a motion for summary judgment [Doc. 19] filed by plaintiff, Paul Toce, M.D. ("Dr. Toce"). By this motion, plaintiff seeks a judgment in his favor, finding plaintiff "is entitled to benefits under several Northwestern Mutual Insurance Company Disability Income policies," and that plaintiff "satisfies the definition of Total Disability." [Id.] Defendant, Northwestern Mutual Life Insurance Company ("Northwestern"), opposes the motion. For the following reasons, the motion is DENIED.

This action was filed by Dr. Toce to recover disability income insurance benefits from Northwestern. Prior to filing for disability benefits, Dr. Toce was a solo practitioner in the field of internal medicine in Lafayette, Louisiana. At all material times, Dr. Toce maintained various insurance policies with Northwestern, including disability income policies and disability overhead expense policies.

In August of 2010, the Louisiana State Board of Medical Examiners ("the Board") sent correspondence to Dr. Toce, advising him an investigation had been initiated due to information

indicating he may have engaged in professional sexual misconduct with patients, and because he had regularly prescribed narcotic and other controlled medications to himself and his family without appropriate documentation in the medical record. [Doc. 25-2, p.1] The Board requested Dr. Toce discontinue practicing medicine while the matter was under investigation. [Id.] Dr. Toce complied with the Board's request.

At the end of August 2010, Dr. Toce met with the Director of Investigations for the Board. [Doc. 25-3, p.14; Doc. 25-5, p.2] The Director recommended Dr. Toce shut down his practice and enter into a treatment facility. [Doc. 25-3, p. 14] According to Dr. Toce, he and the Director came to an informal agreement that if he did everything the Board recommended, his medical license would remain intact. [Id.] On August 29, 2010, Dr. Toce began in-patient treatment at a medical facility approved by the Board. After approximately seven weeks of treatment, Dr. Toce entered in-patient treatment with the Professional Enhancement Program ("PEP"). [Id. at 15-16; Doc. 19-4, p.1; Doc. 25-7, p. 2] Dr. Toce remained in in-patient treatment until January 4, 2011. [Doc. 25-3, p. 16; Doc. 25-7, p.2] During treatment, Dr. Toce was diagnosed with several psychological conditions, including Sexual Disorder, Depressive Disorder, ADHD, and Borderline Personality Disorder. [Doc. 19-1, p.1]

In order to maintain his medical license, the Board required Dr. Toce to follow all recommendations and practice restrictions imposed by PEP. [Doc. 25-3, p. 8; Doc. 19-4, pp. 3-4] Upon Dr. Toce's discharge from PEP, PEP prohibited Dr. Toce from direct clinical care with patients for six months, along with other restrictions. [Doc. 25-6, p. 17] In November or December of 2011, with PEP's approval, Dr. Toce began working as a staff physician at the Louisiana State Penitentiary at Angola, where he remains employed to this date. However, at the commencement of

his employment with the penitentiary, Dr. Toce was only allowed to treat male patients and was required to have a chaperone present during all direct patient care, among other restrictions. [Doc. 25-3, p. 4; Doc. 25-6, p. 17] In June of 2013, Dr. Toce was reassessed by PEP, and his restrictions were modified to allow him to treat female patients over the age of sixty-five with a chaperone present. [Doc. 25-6, p. 18] Additionally, Dr. Toce was prohibited from engaging in a solo practice, the practice of addiction medicine, chronic pain or psychiatric medicine, and he was required to have at least one other physician present during regular work hours. [Doc. 25-6, p. 18]

In February of 2012, Dr. Toce signed a consent order with the Board. [Doc. 18-4, p.1; Doc. 25-3, p. 15] The consent order suspended Dr. Toce's medical license for one year and two months, with such suspension retroactively commencing on September 1, 2010. [Doc. 19-4, p. 3] The consent order provides that Dr. Toce's medical license shall be on indefinite probation, provided he maintains strict compliance with certain terms and restrictions set forth in the consent order, including but not limited to: restricting his practice to a setting pre-approved in writing by the Board, having a chaperone pre-approved by the Board observe all visits and examinations of female patients under sixty years of age, allowing work-place monitoring by PHP at his own expense, no practice in the field of chronic pain management, no treatment of patients with ADD unless the diagnosis has been confirmed by a psychiatrist or other physician specifically trained in that area, continuing medical treatment with PHP and strictly adhering to their recommendations, allowing the Board access to all medical records relating to his personal treatment, providing a copy of the Consent Order to any employer for whom he provides services, and no treatment of family members except in emergency situations. [Id. at pp. 3-6]

On or about December 7, 2010, Dr. Toce filed a request for disability benefits with Northwestern, claiming total disability from August 29, 2010. [Doc. 25-8, p. 1; Doc. 25-7, p.5] On June 24, 2011, Northwestern sent correspondence to Dr. Toce's attorney, stating "we have concluded that the circumstances leading up to the filing of Dr. Toce's claim constitute a legal disability for which no benefits are payable under the terms of his policies." [Doc. 25-8, p.1] Northwestern takes the position Dr. Toce did not stop working "because of an accident or a sickness," but rather, "it was because the Louisiana medical board requested that he 'remove [him]self from practice' while they conducted an investigation of him." [Doc. 25-8, p.1] Pursuant to its opposition memorandum, Northwestern argues no benefits are available to Dr. Toce, because: (1) "his alleged disability does not result from an accident or sickness as required by the Policy but rather results from a legal impediment, *i.e.* – the Board's restrictions of Dr. Toce's practice of medicine"; and (2) to the extent Dr. Toce suffers any disability (which defendant denies), it does not rise to the severity of "total disability." [Doc. 25, pp. 9, 12]

As a general rule, many jurisdictions hold a disability policy provides coverage for factual disabilities, but not legal disabilities. *Broussard v. Northwestern Mutual Investment Services, LLC*, 2011 WL 666293, *3 (W.D.La. 2011)(citing 10 Couch on Insurance § 146:9 (3d ed. 1998)). However, to date, only one Louisiana case has addressed this issue, and it does not provide a bright line rule.[1] In *Berry v. Paul Revere Life Ins. Co.*, 21 So.3d 385 (La.App. 1 Cir. 2009), the court noted that although the disability policy in question did "not define disability in terms of legal or factual disability," nevertheless the State of Louisiana requires a medical license for a doctor to practice his or her profession. *Id.* at 390. Thus, the court noted "[t]he ability to obtain a license may have a

---

[1] As jurisdiction over this matter lies in diversity, Louisiana law is the law applicable to the claim.

bearing on the issue of disability and the doctor's ability to perform his occupation." *Id.* The Court stated in pertinent part:

> There is no rule that legal impediments *per se* can never be a basis for disability. This issue should ultimately turn on the facts and the language of the insurance contract. If the suspension of the license arises out of the covered sickness, then it may be a basis for determining disability.

*Id.* at 390-91. The *Berry* court focused the remainder of its inquiry on a factual determination of whether the claimant was capable of performing his occupation, regardless of his legal status.

Neither party has provided this Court with a copy of the insurance policy at issue. However, all parties appear to agree benefits are provided for total or partial disability if "[t]he disability results from an accident or sickness." [Doc. 19-1, p. 20; *see also* Doc. 25, p. 10] The parties additionally agree the policy provides, "the Insured is totally disabled when he is unable to perform the principal duties of his occupation." [Doc. 19, p. 21; *see also* Doc. 25, p.12]

First, the Court cannot grant summary judgment without reviewing the applicable disability policy. Nevertheless, from the materials presently before the Court, the Court finds a genuine dispute exists as to whether Dr. Toce suffers from a disability which prevents him from performing the principal duties of his occupation. Accordingly, summary judgment is inappropriate in this matter at this time. *See* Fed. R. Civ. P. 56(a). In light of the foregoing, the motion for summary judgment [Doc. 19] submitted by plaintiff is DENIED.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 15 day of December, 2014.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE